In re Lawrence Edwin LIVINGSTON, Debtor.

Eldon MILLER, Plaintiff,

v.

Lawrence Edwin LIVINGSTON, Defendant.

No. 89–A–591.

United States District Court, D. Colorado.

April 10, 1998.

Stephanie E. Dunn, Denver, CO, for Plaintiff.

Robert R. Marshall, Jr., Denver, CO, for Defendant.

## MEMORANDUM OPINION AND ORDER

BORCHERS, United States Magistrate Judge.

THIS MATTER comes before the Court for post-judgment proceedings instituted by Plaintiff Eldon Miller (Plaintiff). The Court held a hearing on April 6, 1998. Plaintiff was represented by Stephanie E. Dunn, while Defendant Lawrence Edwin Livingston (Defendant) was represented by Robert R. Marshall, Jr. Testimony was received, along with argument by counsel. The matter then was taken under advisement.

### I.

In early 1987, Plaintiff and Defendant became partners in a real estate project located in the Perry Park subdivision. This partnership was formed when Plaintiff and Defendant entered into an oral agreement whereby Plaintiff would invest money into the project and then realize 50% of any profits generated by the sale of lots in the subdivision.

The oral agreement provided that Plaintiff would invest $50,000 into the joint venture. That eventually increased to $150,000. The oral agreement also provided that Defendant would be responsible for selecting, purchasing and selling the lots in the subdivision. Plaintiff was to perform the bookkeeping services for the partnership. The lots were to be purchased in Defendant's name.

A bank account was established at the Colorado National Bank Tech Center. Plaintiff and Defendant agreed to joint control of the bank account. They further agreed that the bank account would be utilized for all income and expenses. No written agreement was ever prepared to reflect the oral understanding of the parties.

Plaintiff made payments into the bank account from February 26, 1987 to June 8, 1987. Money was withdrawn from the account and used for purchase of various lots. Some of those lots were sold at a profit.

After the oral agreement was entered into, problems arose between Plaintiff and Defendant. Plaintiff requested interest be paid on the money that had been placed into the partnership account. Defendant wanted compensation for the time he was spending on the development work. Other disputes arose, and the relationship between the two deteriorated.

On August 6, 1987, Plaintiff and Defendant agreed that the partnership would be terminated. Plaintiff was to receive his initial $150,000, plus one-half of the profits from lots that had been sold and paid for by third parties.

Subsequent to this date, Defendant transferred all money from the bank account to an account in another bank that was held solely in his own name. Plaintiff further secured a loan in the amount of $200,000 and pledged all of the lots purchased as collateral. Defendant never repaid to Plaintiff any of the $150,000.

In August, 1987, Plaintiff sued Defendant in state court. In addition to commencing the law suit, Plaintiff filed a lis pendens against all property owned by Defendant. Shortly thereafter, Defendant filed in the United States Bankruptcy Court a petition for protection under Chapter 11 of the Bankruptcy Code. This petition ultimately was converted to a proceeding under Chapter 7 of the Code.

Plaintiff commenced the present action as an adversary proceeding in the Bankruptcy Court. Plaintiff sought a determination that his claim against Defendant was non-dischargeable. A trial was held in 1992 on the dischargeability complaint. The Bankruptcy Court held that Defendant's debt to Plaintiff in the amount of $191,325.34 was non-dischargeable pursuant to 11 U.S.C. § 523(a)(4). Judgment was entered against Defendant in that amount.

The judgment was filed in this Court for purposes of post-judgment proceedings. Through counsel, Plaintiff began proceedings in an attempt to obtain satisfaction of the judgment.[1] On February 18, 1998, Plaintiff filed a document entitled "Motion to Transfer ownership of Broncos' Season Tickets To-

---

1. The evidence at the hearing indicated that Defendant had made no attempt to pay the judgment. In fact, Defendant had used every available means to avoid paying the judgment. Defendant had transferred property into his wife's name and utilized various corporate entities to avoid paying his debt to Plaintiff.

wards Satisfaction of Judgement." Plaintiff characterized the motion as one brought pursuant to Colo.R.Civ.P. 69(g). Plaintiff requested an order transferring the tickets and crediting Defendant in the amount of $1,700.00 toward the total amount owed on the judgment.

The Court set a hearing to allow presentation of evidence. That hearing occurred on April 6, 1998. Through counsel, Plaintiff tendered the affidavit of Trevor Hinz, who is an official of the Denver Broncos football club. No objections were received from Defendant for consideration of the affidavit. Mr. Hinz simply indicated that Defendant was the season ticket holder for seats 1, 2, 3, and 4 in Section 130, Row 1. Defendant had not made any attempt to transfer these tickets to his wife or anyone else. Mr. Hinz placed the value on the tickets for the upcoming season at $1,700.

Through counsel, Defendant presented the testimony of his wife, Paula Livingston. In her testimony, Ms. Livingston indicated that she has been married to Plaintiff since 1986. She testified that in 1988 she had purchased all of Defendant's personal property. This was reflected in Exhibit 1, a bill of sale from Defendant to Ms. Livingston. Ms. Livingston stated that she had loaned $30,000 to Defendant from her sole and separate funds. In exchange for the items of personal property, the debt of $30,000 was canceled.

Ms. Livingston testified that it was her intent, as well as that of Defendant, to purchase all items of personal property, including the season tickets for Denver Broncos games. Ms. Livingston acknowledged in her testimony that no mention was made of the tickets in the bill of sale. She testified that she has paid for the renewal of the season tickets each year with her own money and has utilized them with clients from her sole and separate business. She testified that she had not made any attempt to seek the transfer of the tickets into her own name, as she assumed the policy of the Broncos football team was to require the tickets to remain in the name of the original purchaser.

## II.

■ Fed.R.Civ.P. 69 reads, in part, as follows:

(a) In General. Process to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs otherwise. The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought, except that any statute of the United States governs to the extent that it is applicable. In aid of the judgment or execution, the judgment creditor or a successor in interest when that interest appears of record, may obtain discovery from any person, including the judgment debtor, in the manner provided in these rules or in the manner provided by the practice of the state in which the district court is held.

This Court must look to Colorado practice and procedure for post-judgment proceedings in aid of execution on a judgment. *In re Nye*, 210 B.R. 857 (D.Colo.1997); *In re Kobernusz*, 160 B.R. 844 (D.Colo.1993).

The Colorado Supreme Court has promulgated Colo.R.Civ.P. 69 for execution on a judgment and supplemental proceedings. This rule provides that a judgment debtor may be required to appear before a "court, master or referee with requested documents." Colo.R Civ.P. 69(e). The rule further provides that "any person [who] has property or is indebted to a judgment debtor" may be subpoenaed to appear before a court, master or referee. Colo.R.Civ.P. 69(f).

In his motion, Plaintiff has relied upon Colo.R.Civ.P. 69(g) to request transfer to him of the Denver Broncos season tickets. This rule reads as follows.

Order to Apply Property on Judgment; Contempt. The Court, master, or referee may order any party or other person over whom the court has jurisdiction, to apply any property other than real property, not exempt from execution, whether in the possession of such party or other person, owed the judgment debtor, towards satisfaction of the judgment. Any party or person who disobeys an order made under the provisions of this Rule may be punished for contempt. Nothing in this rule

shall be construed to prevent an action in the nature of a creditor's bill.

The file reflects that no subpoena was served upon Defendant requiring his appearance at the hearing on April 6, 1998. His wife, Paula Livingston, was not notified formally of the proceeding, but appeared voluntarily in order to claim an interest in the season tickets. Plaintiff did serve a writ of garnishment upon the Denver Broncos Football Club, and its return indicated that it was not holding any property belonging to Defendant. The testimony from Paula Livingston indicated that she had physical possession of the season tickets and kept them in her desk at her office in the home she shared with Defendant.

This Court must look to Colorado law, procedure, and practice to determine if relief can be granted to Plaintiff. *In re Nye, supra.* The Colorado Supreme Court has ruled that the predecessor to Rule 69(g) (previously denominated as Rule 69(f)) could utilized, even though a judgment debtor had not been summoned before the court for examination. *Hudson v. Amer. Founders Life Ins. Co.,* 160 Colo. 420, 417 P.2d 772, 775 (1966). The section is an enforcement tool used to satisfy a judgment.

The Colorado Court of Appeals examined the predecessor to Rule 69(g) in *Equisearch, Inc. v. Lopez,* 722 P.2d 426 (Colo.App.1986). In that case, the court was presented with an issue of disputed ownership of property. The court examined Rule 69(g)'s history. The court held, in part, as follows:

> The issue before us is whether, when a person, not a party to the original action, appears pursuant to subpoena under C.R.C.P. 69(e) and denies that he is either obligated to or in possession of any property of the judgment debtor, the court can resolve the contested issues raised by such denial as part of the C.R.C.P. 69 proceeding? We hold that it cannot and that, upon receiving such denial, the court must terminate further C.R.C.P. 69(e) and (f) proceedings against such third party.

*Id.* 722 P.2d at 428. The court noted that previous state decisions had precluded use of post-judgment proceedings to determine the status of disputed property. *See, Allen v. Tritch,* 5 Colo. 222 (1880); *Walker v. Staley,* 89 Colo. 292, 1 P.2d 924(1931).

In a subsequent opinion, the Colorado Court of Appeals found a significant difference between proceedings brought pursuant to Rule 69 and garnishment proceedings brought pursuant to Colo.R.Civ.P. 103. *Maddalone v. C.D.C., Inc.,* 765 P.2d 1047 (Colo. App.1988). The court held the garnishment proceedings pursuant to Rule 103 provided due process of law to a third party, while Rule 69 proceedings did not.

In this case, Plaintiff presented the affidavit of Mr. Hinz concerning the name in which the season tickets were held, that being Defendant. No other witnesses or evidence was presented by Plaintiff. Through his counsel, Defendant called his wife, Paula Livingston. She claimed ownership of the tickets.

■ Ms. Livingston voluntarily appeared before the Court. She claimed an ownership interest in the season tickets. This Court sees no difference in a voluntary appearance in which a third party claims ownership of property and one where a third party appears pursuant to subpoena and claims ownership. Under the rule set forth in *Equisearch v. Lopez, supra,* the dispute of ownership concerning the Denver Broncos season tickets brings to a halt any further proceedings under Colo.R.Civ.P. 69(g). Plaintiff may choose to pursue other legal remedies, but Rule 69(g) is not available to obtain the tickets and to apply their value in partial satisfaction of the outstanding judgment.

IT IS HEREBY ORDERED that Plaintiff's motion for transfer of ownership of Denver Broncos' season tickets towards satisfaction of judgment is denied.